**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 15, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BOBBY BRUCE WHITE,

Plaintiff - Appellant,

v.

KANSAS DEPARTMENT OF
CORRECTIONS; RAY ROBERTS,
Secretary of Corrections, Kansas
Department of Corrections; V.
BRUNGARDT, Secretary of
Corrections Designee, Kansas
Department of Corrections;
DOUGLAS BURRIS, Secretary of
Corrections Designee, Kansas
Department of Corrections; REX
PRYOR, Warden, Lansing
Correctional Facility; JAMES
HEIMGARTNER, Warden, El Dorado
Correctional Facility; MYRON
ALFORD, Unit Team Manager,
Lansing Correctional Facility; FNU
NANCE, Unit Team Manager, Lansing
Correctional Facility; FNU
ANDERSON, Correctional Counselor,
Lansing Correctional Facility; FNU
SKIDMORE, Correctional Counselor,
Lansing Correctional Facility; FNU
WATSON, Unit Team Manager, El
Dorado Correctional Facility; FNU
HISOR, Correctional Counselor,
Lansing Correctional Facility; FNU
THOMAS, Correctional Counselor,

No. 16-3098
(D.C. No. 5:14-CV-03004-JTM)
(D. Kan.)

Lansing Correctional Facility;
JOHN/JANE DOES (1), Officers and
KDOC Employees; CORRECT CARE
SOLUTIONS; CORIZON MEDICAL;
C. HARROL, Chief Medical Officer,
El Dorado Correctional Facility;
JOHN/JANE DOES (2), Medical
Employees, Correct Care Solutions
and Corizon Medical,

       Defendants - Appellees.

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HOLMES**, and **MORITZ**, Circuit Judges.

---

**I**

Pro se[1] prisoner Bobby Bruce White sued Kansas Secretary of Corrections

Ray Roberts, the Kansas Department of Corrections ("KDOC"), various

correctional employees, and the private KDOC medical providers (collectively,

"Defendants"), asserting claims under 42 U.S.C. § 1983, the Americans with

---

[*]     This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]     Because Mr. White appears pro se, we afford his filings a liberal construction, but do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

2

Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a). The district court dismissed Mr. White's amended complaint and denied his motion for injunctive relief—one of a flurry of motions—but granted him leave to file a second amended complaint concerning *only* his claim that Defendants failed to provide adequate medical care in the aftermath of injuries he sustained during a March 1, 2013 cell extraction.

Following our affirmance of the district court's denial of injunctive relief, *see White v. Kan. Dep't of Corrs.*, 617 F. App'x 901 (10th Cir. 2015), Mr. White filed a second amended complaint—again, along with a bevy of other filings—in which he brought claims for inadequate medical care, denial of access to the courts, and retaliation. The district court found each claim fatally flawed, and dismissed Mr. White's second amended complaint—and his overall civil action—in its entirety for failure to state any plausible claims for relief.[2] Mr. White appeals from this dismissal and the district court's subsequent final judgment.

---

[2] Although it is unclear whether the district court based its dismissal of Mr. White's second amended complaint on Federal Rule of Civil Procedure 12(b)(6), 28 U.S.C. § 1915(e)(2)(B)(ii), or 28 U.S.C. § 1915A(b)(1), our disposition of this case would be the same regardless of which one of these bases it invoked. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (explaining that an appellate court may affirm a district court decision on any grounds supported by the record); *Peltier v. Fed. Bureau of Prisons*, 185 F.3d 874, at *1 (10th Cir. 1999) (unpublished table decision) (reaching the same conclusion in the face of an unclear district court order).

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm**.

## II

On January 6, 2014, Mr. White filed a pro se complaint against KDOC and various KDOC employees, asserting that these Defendants violated a variety of his constitutional rights and the ADA by subjecting him to "inhumane treatment and condition[s] of confinement[,]" physical assaults, and denying him necessary medical care, among other things. R., Vol. I, at 17–18 (Compl., filed Jan. 6, 2014). During initial screening pursuant to 28 U.S.C. § 1915A(a), the district court found that Mr. White's pleading failed to identify any specific acts or omissions by the named Defendants, and directed him to submit an amended complaint that included more particularized factual support for his claims.

### A

On February 18, 2014, Mr. White filed an amended (and more detailed) complaint. In his amended complaint, he alleged that, while in the segregation unit of the El Dorado Correctional Facility ("EDCF") on March 1, 2013, unknown correctional officers charged into his cell with sirens blaring, "pepper sprayed [him] in the face and down the length of [his] body . . . , tazored" [sic] him, "pinned [him] against the side of [his] metal bunk and . . . twist[ed] [his] left foot at the ankle[,]" causing him "excruciating" pain. *Id*. at 73 (Am. Compl., filed Feb. 18, 2014). The officers then purportedly "slid [him] out from under the bunk" where he had encamped himself prior to the "attack[,]" handcuffed him,

4

and took him to the showers, "bouncing [his] head off the shower wall." *Id.* This conduct, in turn, caused severe—but largely unspecified—injuries to his left leg, ankle, and head, *id.* at 74–76; supposedly, these injuries went largely unaddressed by KDOC officials. *Id.* at 77–82.

On account of this episode, and the subsequent discrimination allegedly borne from his efforts to obtain redress, Mr. White advanced claims that KDOC employees and officials violated federal law and his constitutional rights by: (1) failing to protect him from discriminatory practices and personal physical and mental injury; (2) acting deliberately indifferent to the theft of his personal property by other inmates; (3) acting deliberately indifferent to his complaints about his medical treatment, housing conditions, and harassment by correctional officers; (4) failing to identify the officers who allegedly assaulted him during the March 2013 cell extraction; (5) providing him inadequate medical care for the injuries he sustained during the March 2013 cell extraction; and (6) failing to expedite his administrative grievances on an array of matters. *Id.* at 63–66.

The district court concluded that Mr. White's amended complaint failed to state plausible claims for relief in all respects, with the exception of his "most serious allegations" concerning the adequacy of the medical care provided to him after the March 2013 cell extraction.[3] *See* R., Vol. I, at 130–37 (Order, filed Sept.

---

[3] The district court granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

16, 2014). With respect to that claim, the district court advised Mr. White that "[p]ersonal participation" constitutes an "essential [ingredient] in a civil rights complaint," and granted him leave to amend, in order to provide greater detail concerning the underpinnings for those allegations—including, the specific conduct by each defendant and the specific legal right Mr. White believed each defendant violated. *Id.* at 134–35.

**B**

Following resolution of Mr. White's first appeal, he filed a second amended complaint against KDOC, various KDOC employees and correctional officers, and the private KDOC medical providers. *See id.* at 262–300 (Second Am. Compl., filed Oct. 14, 2015). In the second amended complaint, Mr. White asserted—as in the two prior iterations, and in accordance with the district court's instructions—that he sustained serious injuries during a March 2013 cell extraction, that Defendants denied him adequate medical care to redress these injuries, and that KDOC officials failed to promulgate or follow appropriate guidelines and procedures to prevent these constitutional deprivations. *See, e.g.*, *id.* at 264–65 (alleging that he was injured, "tazored" [sic] and "pepper-sprayed" by KDOC officers, and then denied adequate medical care).

More specifically, Mr. White raised claims that: (1) KDOC officials failed to supervise their employees, failed to follow KDOC policies and procedures, and implemented policies so deficient that they led to a violation of his constitutional

6

rights ("Count I"); (2) KDOC employees acted with deliberate indifference to his

medical needs, despite his many requests through the state grievance procedure

("Count II"); (3) the contract medical care provider for the KDOC, Correct Care

Solutions ("CCS"), failed to provide timely and adequate medical care ("Count

III"); (4) the contract medical care provider for the KDOC as of January 2014,

Corizon Medical ("Corizon"), failed to provide timely and adequate medical care

("Count IV"); (5) KDOC's chief medical officer, Dr. C. Gordon Harrod, denied

him adequate, timely, and competent medical care by, *inter alia*, refusing to

follow certain treatment plans, failing to order necessary follow-up examinations,

and placing him in "unwarranted" mental health isolation ("Count V"); and (6)

various employees of CCS and Corizon acted with deliberate indifference to his

medical needs, by failing to appropriately assess, monitor, and treat Mr. White's

mental and physical conditions ("Count VI").[4]

---

[4]    Shortly after filing the Second Amended Complaint, Mr. White filed a document styled, "AFFIDAVIT and Memorandum for the Record[,]" in which he purported to provide "proof for the record" of his "current conditions of [i]ncarceration and [his] attempts to get humane penological and medical treatment from the KDOC."  R., Vol. I, at 301 (Aff. & Mem. for the R., filed Oct. 20, 2015).  More specifically, Mr. White detailed two grievances he filed on September 7, 2015, concerning, *inter alia*, his cell's poor living conditions and his unanswered requests for medical supplies, paper, pencils, and envelopes. Nevertheless, the district court deemed these additional episodes improper for inclusion in the Second Amended Complaint, and advised Mr. White that he must file a separate complaint in order to a raise a conditions-of-confinement claim, or any other claim unrelated to the March 2013 cell extraction.  *See* R., Vol. I, at 366 (finding "any claims based on the September 7, 2015 grievances separate from the claims raised in the Second Amended Complaint").  Mr. White mounts

(continued...)

In addition, Mr. White raised—for the first time and without leave from the district court—allegations embedded within these claims that KDOC personnel denied him access to the courts, retaliated against him on account of his requests for short and long-term medical care, and prevented him from maintaining his correctional facility job. These allegations rested, in part, on the March 2013 cell extraction, but also on events that occurred long after the date of Mr. White's initial complaint—January 16, 2014—and extended into 2015.

## C

Although Mr. White's pleading exceeded the prior order granting him leave to amend, the district court granted Mr. White "leave to assert claims for denial of access to the courts and retaliation so long as [those claims rested on] facts related to the March 2013 cell extraction incident." R., Vol. I, at 357 (Mem. & Omnibus Order, filed Apr. 12, 2016). The district court, however, found claims "based upon unrelated subsequent events . . . improper[,]" and determined that those aspects of his claims would "not be considered in this case."[5] *Id.*

---

[4](...continued)
no challenge to this determination on appeal.

[5] In declining to reach those aspects of Mr. White's allegations, the district court reasoned that Mr. White's allegations subsequent to his initial complaint concerned unrelated claims that could not be joined under Federal Rule of Civil Procedure 18, particularly without a motion to amend under Federal Rule of Civil Procedure 15(a)(2). *See* R., Vol. I, at 357 (reasoning that "[u]nrelated claims against different defendants belong in different suits," and that Mr. White failed to "first obtain the court's leave to add claims for denial of access to the
(continued...)

8

Turning then to the claims related to the cell extraction in March 2013, the district court reviewed Mr. White's allegations and concluded at the outset that he failed to state a claim for deliberate indifference,[6] because his allegations demonstrated at most negligence, and failed to suggest that any defendant acted with a culpable state of mind—*viz.*, Mr. White's allegations fell short of meeting the subjective component of the deliberate indifference standard. *Id.* at 360. For that reason, the district court concluded that Mr. White's second amended complaint stated "no actionable constitutional claim[,]" seemingly because each of his six claims hinged upon his overarching allegation of deliberate indifference to his serious medical needs. *Id.*

---

[5](...continued)
courts and retaliation"). In that way, the district court effectively denied Mr. White's proposed amendment.

[6] The district court referred to Mr. White's deliberate indifference claims interchangeably as claims for "[i]nadequate medical care," but analyzed the claims under the well-established Eighth Amendment rubric for deliberate indifference. R., Vol. I, at 360.

Nevertheless, the district court proceeded to find "each individual count . . . deficient or barred on [an array of] other grounds[,]"[7] *id*., and entered judgment accordingly.[8] This timely appeal followed.

## III

We review de novo a district court's dismissal for failure to state a claim. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (explaining that we employ the same standards for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6)); *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001) (addressing dismissal under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).  To avoid such a dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[7]    The district court concluded, without explanation, that a "private corporation performing a government function can be held liable" under 42 U.S.C. § 1983.  R., Vol. I, at 363.  "Guided by Supreme Court and persuasive circuit court authority," we have no reason to question this conclusion.  *Spurlock v. Townes*, --- F. App'x ----, 2016 WL 4743781, at *1 n.1 (10th Cir. 2016) (collecting cases, and finding a private prison-management company subject to suit under § 1983).

[8]    With his Notice of Appeal, Mr. White filed an "Opposition to Dismissal[,]" R., Vol. I, at 372–75, which the district court treated as a motion for reconsideration; the court denied it on May 16, 2016, *see id*. at 406–408 (Mem. & Order Den. Recons., filed May 16, 2016).  Mr. White, however, never filed a new or amended notice of appeal, nor conveyed in his appellate brief any intention to appeal the district court's order on his reconsideration motion.  As a result, we lack jurisdiction to review the denial of Mr. White's motion for reconsideration. *See* Fed. R. App. P. 4(a)(4)(B)(ii); *Breeden v. ABF Freight Sys., Inc.*, 115 F.3d 749, 752 (10th Cir. 1997).

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A district court may dismiss a pro se complaint for failure to state a claim "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay*, 500 F.3d at 1217 (quoting *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001)).

We review a district court's refusal to permit an amendment—as occurred relative to Mr. White's new claims for denial of access to the courts and retaliation—for abuse of discretion. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

## IV

Mr. White challenges the district court's dismissal and subsequent final judgment on three grounds. First, he claims that the district court "unreasonably" dismissed his complaint for failure to state a claim, despite permitting him to amend his claims of inadequate medical care (that is, his claims for deliberate indifference to his serious medical needs). Aplt.'s Br. at 5. Second, he claims that the district court erred in declining to consider his "additional" and "continuing" claims of denial of access to the courts and retaliation, by failing to appreciate that each new claim arose from his original claim of inadequate medical care. *Id*. at 11–12. Finally, he argues that the district court erred in dismissing his claims against the unnamed employees of CCS and Corizon,

11

because the court failed to fulfill *its* "duty" to identify and effect service upon these unidentified defendants. *Id*. at 15–17.

For the reasons expressed below, we reject each of Mr. White's challenges and accordingly uphold the district court's dismissal and subsequent final judgment.

## A

We first address Mr. White's contention that the district court acted "unreasonably" by permitting him to file a second amended complaint on his claim of inadequate medical care, and then "summarily" dismissing that amended complaint for "failure to state a claim." *Id*. at 5. More specifically, Mr. White advances the view that, in granting leave to amend, the district court found a "valid claim" for inadequate medical care, and therefore "abuse[d] [its] discretion" by dismissing his *subsequent* amended inadequate medical care claim without the benefit of discovery. *Id*.

Mr. White's position, however, rests on a fundamental misreading of the district court's order. Indeed, in permitting an *additional* amendment, the district court specifically explained the deficient nature of Mr. White's inadequate medical care allegations, and expressly advised him that a *subsequent* failure to properly plead that claim would result in dismissal. In other words, the district court never concluded that Mr. White stated a viable claim for deliberate indifference to serious medical needs. Rather, it resolved to provide Mr. White

12

with one more opportunity—after he had already had two (i.e., the original complaint and one amendment)—to plead the necessary factual underpinnings for such a claim. Thereafter, in reviewing the allegations of the second amended complaint, the district court simply concluded that Mr. White *again* failed to state an "actionable constitutional claim[,]" because his allegations failed to suggest that any of the defendants acted with the requisite culpable state of mind—*viz.*, his allegations did not meet the subjective component of the deliberate indifference standard.[9] *Id.* at 360.

In any event, we agree with the district court's conclusion that Mr. White's allegations fail to approach the "deliberate indifference to serious medical needs" that constitutes an Eighth Amendment violation.[10] *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment standard, which "provides the benchmark for such claims," requires a plaintiff to satisfy both an objective component (a sufficiently serious deprivation) and a subjective component (deliberate indifference on the part of the official responsible). *Craig v. Eberly*,

---

[9] In dismissing Mr. White's second amended complaint, the district court made no express finding on the issue of futility. Rather, the district court appears to have implicitly reached that conclusion when it subsequently entered final judgment. Nevertheless, Mr. White mounts no challenge to the absence of any express finding on futility, and has therefore waived any such argument on appeal.

[10] The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits deliberate indifference to an inmate's serious medical needs. *See Estelle*, 429 U.S. at 106; *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996).

13

164 F.3d 490, 495 (10th Cir. 1998). We determine—like the district court—that Mr. White failed to adequately plead the subjective component, and therefore do not reach the objective component.

To satisfy the subjective prong, the prison official must have a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must therefore allege that the prison official "kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837. In other words, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. In that way, "allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent . . . diagnos[is]' simply fail to establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (citation omitted).

Applying that rubric here, we agree with the district court that Mr. White has not sufficiently alleged the requisite culpability. Critically, his second amended complaint includes no plausible allegation that any defendant appreciated but ignored a substantial risk of serious harm. Indeed, Mr. White acknowledges on the face of his complaint that he received medical treatment—even if insufficient in his eyes—in the aftermath of the March 2013 cell extraction. *See, e.g.*, R., Vol. I, at 270–75 (describing the treatment he received for his injuries, including x-rays and medication, and detailing an

14

episode in which he challenged the medication a nurse tried to provide him). Rather, the complaint simply states his disagreement with the prescribed course and speed of medical treatment; even construing his allegations liberally, they amount only to bare and unsupported conclusions that he was denied adequate medical care. *See, e.g.*, *id*. at 273 (arguing what the "proper [medical] response" should have been, and concluding that the failure to follow that response constituted inadequate medical care); *id*. at 275 (arguing, with almost no factual support, that medical staff failed to provide him with "adequate medical care" for an "infected wound on his left butt cheek"); *id*. at 276 (challenging the medical decision to place him in mental health isolation after the cell extraction).

In this way, Mr. White raises only the specter of negligent or inadvertent failure to provide medical care, not the deliberate indifference required for purposes of an Eighth Amendment violation, and his allegations beyond that amount to little more than unsupported conclusions. *See Riddle v. Mondragon*, 83 F.3d 1197, 1204–06 (10th Cir. 1996) (affirming dismissal, because the plaintiff's conclusory allegations did not rise to the level of deliberate indifference).

For all of these reasons, we uphold the district court's judgment that Mr. White failed to state a cognizable claim for deliberate indifference.

**B**

We next address Mr. White's contention that the district court erred in declining to consider his "additional" and "continuing" claims of denial of access

15

to the courts and retaliation. Aplt.'s Br. at 11–12. More specifically, Mr. White claims that, in declining to consider these *new* allegations, the district court "failed to see that all the additional claims" related to his inadequate medical care claims and "showed a pattern" of unconstitutional conduct. *Id*. at 12.

Mr. White's position, however, again distorts the district court's order. Indeed, the district court only declined to consider those *new* allegations that bore no connection to the single claim it permitted Mr. White to pursue in his second amended complaint: the claim of inadequate medical care after the March 2013 cell extraction. The district court *did* consider those "claims for denial of access to the courts and retaliation" that "related to the March 2013 cell extraction incident."[11] R., Vol. I, at 357. In other words, the district court expressly took note of and accepted the new allegations to the extent they informed Mr. White's claim of deliberate indifference.

Aside from that, even a cursory inspection of Mr. White's new allegations reveals that they extend far beyond his core claim of deliberate indifference.

_____

[11] In reaching its conclusion, the district court did not address Federal Rule of Civil Procedure 15(d), which states that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. . . . even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). Mr. White's challenges only go to the characterization of his averments—*viz.*, whether they were sufficiently related to his inadequate medical care claims—not to the legal premise under which the district court declined to consider them. Therefore, we have no reason to opine on the applicability of Rule 15(d) to these facts. In this regard, we will not act as Mr. White's advocate. *See Yang*, 525 F.3d at 927 n.1.

16

Indeed, in his second amended complaint, Mr. White's allegations of "retaliation" and the "denial of access to the courts" rest upon widely scattered conduct—the majority of which has little to no relation to his claim of deliberate indifference. Mr. White, for example, claims that correctional officers retaliated against him after he complained of the "gross" and "unsanitary" condition of his cell. *Id*. at 269. Similarly, he alleges that correctional officers retaliated against him and denied him access to the courts, through the use of a "'scared straight' program[,]" in which officers "condon[ed]" the "violent terroristic behavior" of other inmates. *Id*. at 272. These matters have no apparent nexus to Mr. White's claim of deliberate difference—and indeed present no medical issue at all—and under these circumstances, we agree with the district court that these "[u]nrelated claims against [seemingly] *different defendants* belong in different suits." *Id*. at 357 (emphasis added).

Against that backdrop, we discern no abuse of discretion in the district court's refusal to permit another amendment.

## C

Finally, we turn to Mr. White's claim that the district court erred in its treatment of Count VI—i.e., his constitutional claim against multiple *unknown* employees of CCS and Corizon. More specifically, Mr. White points to 28 U.S.C. § 1915(d), and argues that the district court should have helped him identify these defendants through discovery and "serve[d] [his] summons," rather than

17

dismissing his claim outright for failure to allege sufficient identifying information. Aplt.'s Br. at 15–17. The district court dismissed Count VI on the grounds that Mr. White "describe[d] no acts" by the unidentified defendants and "provided no information that would allow service upon these unnamed defendants"—despite the district court's prior instructions. R., Vol. I, at 365. We are not persuaded by Mr. White's contention of error.

Although permission to proceed *in forma pauperis* triggers the district court's duty "to serve process for the plaintiff" under 28 U.S.C. § 1915(d), *Olsen v. Maples*, 333 F.3d 1199, 1204 (10th Cir. 2003), 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A permit district courts to screen complaints for merit *prior to* proceeding to service (or any efforts directed towards service)—and indeed encourage such an approach where feasible. *See* 28 U.S.C. § 1915A(a) ("The court shall review, *before docketing*, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." (emphasis added)); *cf. Buchheit v. Green*, 705 F.3d 1157, 1160–61 (10th Cir. 2012) (implying that merits screening often occurs before service, but concluding that the statutory screening requirements *do not impose a duty* to screen or review *before* service). The district court followed precisely that process here, and we can discern no error in the discretionary sequencing it

18

employed in resolving this matter, particularly given the multiple rounds of deficient pleadings.

Beyond that procedural point, on the merits, the district court rightly observed that the allegations of Mr. White's second amended complaint described no specific conduct of the unidentified defendants, nor provided any information from which to divine their identities. Indeed, in his second amended complaint, Mr. White alleges little more than that various "medical and mental health employees" acted with "deliberate indifference to [his] serious medical needs." R., Vol. I, at 278–79. Mr. White, however, provides no information from which to ascertain their identities (even in part), nor do his allegations delineate—with any degree of specificity—the actual conduct that he claims amounts to deliberate indifference. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (explaining that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

For all of these reasons, we discern no error in the district court's order dismissing Count IV.

**V**

Based on the foregoing, we **affirm** the district court's dismissal and subsequent final judgment.

Entered for the Court


JEROME A. HOLMES
Circuit Judge